**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENJAMIN AUSTIN,<br><br>                              Plaintiffs,<br><br>            v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.<br>AND LASH AUTO GROUP LLC D/B/A LASH<br>VOLKSWAGEN OF WHITE PLAINS,<br><br>                              Defendants. | 15-cv-7806<br><br>COMPLAINT<br><br>Jury Trial Demanded |

**The Parties**

1.      Plaintiff Benjamin Austin is a New York resident residing at 32 Magnolia Drive,

Dobbs Ferry, NY 10522.

2.      Defendant Volkswagen Group of America, Inc. ("Volkswagen") is a New Jersey

corporation doing business in and registered to do business in New York and having a place of

business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.

3.      Defendant Lash Auto Group LLC d/b/a Lash Volkswagen of White Plains (the

"Dealer") is a New York State limited liability company 376 Tarrytown Road, White Plains, NY

10607.

**Nature Of Action**

4.      This is an action for false advertising under section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a).

5.      This is an action for false advertising under New York General Business Law §
350.

6.      This is further an action for deceptive business practices under New York General
Business Law § 349.

7.      This is further an action for fraud and fraudulent inducement under the laws of the
State of New York.

8.      This is further an action for breach of contract under the laws of the State of New
York.

9.      This is further an action for breach of the implied warranties of merchantability
and fitness for an intended purpose under the laws of the State of New York.

**Jurisdiction And Venue**

10.     Subject matter jurisdiction over the Lanham Act claim is proper pursuant to 28
U.S.C. § 1331 and 1338.

11.     Subject matter jurisdiction over the state law claims is proper pursuant to 28
U.S.C. § 1367.

12.     Personal jurisdiction is proper as to Volkswagen under CPLR § 302(a)(1), (2) and
(3).

13.     Personal jurisdiction is proper as to Dealer is proper under CPLR § 301, as this
Defendant resides within New York State.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**Facts**

15.     This action flows from the intentional installation of so-called defeat devices on approximately 11 million Volkswagen and Audi vehicles sold worldwide, including in the United States and specifically in the State of New York since 2009. Defendants jointly and severally marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance, with very low emissions.

16.     For years, Defendants advertised their diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of Volkswagen's brand image in the United States, which Dealer intentionally leveraged and repeated in its own advertising. Defendants have been successful in their advertising campaigns; Volkswagen vehicles have become the largest selling brand of diesel passenger vehicles in the United States.

17.     Defendants' success is based in large part on promoting the affected diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendants' diesel engine marketing campaign. "Clean Diesel" is in the very name of the vehicles about which Defendants lied.

18.     Defendants' apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of Volkswagen's website it states that it takes

> environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives.

19.     Dealer makes substantively similar statements on its website.

20.     Defendants bolster the vehicles' apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the "2010 Green Car of the Year" and the "2009 Green Car of the Year", respectively.

21.     Volkswagen also launched a "Think Blue" program, which it explained as being part of its policy of being "more responsible on the road and more environmentally conscious—not just in our cars."  Dealer actively participated in this program.

22.     Beyond merely advertising, Volkswagen supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

23.     Although Defendants successfully marketed these expensive cars as "green", their environmentally-friendly representations were a sham.  In fact, Volkswagen designed and built the affected vehicles Volkswagen to include a "defeat device"  designed to circumvent relevant environmental laws and regulations.

24.     According to the U.S. Environmental Protection Agency (EPA), Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: model year 2009-2015 VW Jetta; model year 2009-2015 VW Beetle; model year 2009-2015 VW Golf; model year 2014-2015 VW Passat; and model year 2009-2015 Audi A3.

25.     The defeat devices work by switching on the full emissions control systems in the affected cars only when the car is undergoing emissions testing. The technology needed to control emissions from the affected cars cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.  To hide this, the

defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the car more pleasurable to drive and thus more desirable to consumers, it resulted in the affected cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and various state regulations.  These violations are explained in a Notice of Violation issued by the EPA to Volkswagen, and are similarly addressed in a letter from the California Air Resources Board ("CARB").

26.     The affected vehicles emit pollutants at breath-taking levels, failing state and federal environmental regulations by margins of approximately 40% and/or emitting certain pollutants at up to 40 times the standard allowed under applicable federal law regulations.

27.     As reported in the New York Times on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software.

28.     Instead of delivering on their promise of extremely high fuel mileage coupled with low emissions, Vollkswagen devised a way to make it appear that their cars did what they said they would when, in fact, they did not.

29.     According to media sources, Volkswagens' CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the

public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0

liter diesel engines.  Defendants have thus admitted their intentional misrepresentation.

30.     Further according to media sources, Mr. Winterkorn resigned as CEO of

Volkswagen on September 23, stating in part,

> I am shocked by the events of the past few days. Above all, I am
> stunned that misconduct on such a scale was possible in the
> Volkswagen Group

31.     Prior to meeting with Dealer, Plaintiff researched extensively fuel efficient, low

emission vehicle options with the intention of purchasing only a highly fuel efficient, low

emission vehicle.Plaintiff met with Dealer at Dealer's showroom in White Plains, New York on

April 10, 2014, April 17, 2014, and April 29, 2014 (collectively the "sales meetings").  During

the sales meetings, Dealer expressly stated that the affected vehicles, including the one being

offered to Plaintiff, were fuel efficient and low emission vehicles.  Dealer touted these attributes

as part of its assertive sales pitch in an effort to consummate the sale of one of the affected

vehicles to Plaintiff, including by way of one or more detailed brochures provided to Plaintiff by

Dealer.  These brochures emphasized that the affected vehicles, including the one being offered

to Plaintiff, were fuel efficient and low emission vehicles.

32.     During the sales meetings, Dealer further touted its service department as having

unusually high expertise in the operation and repair of Volkswagen vehicles, including the

affected vehicles like the one being offered to Plaintiff.  As a result, Dealer knew or should have

known of the defeat device contained in the affected vehicles and/or was grossly negligent in

failing to identify the presence of the defeat device in the affected vehicles.

33.     During the sales meetings, Plaintiff test drove one of the affected vehicles,

positively noting and responding to its performance characteristics, including *inter alia* the

vehicle's acceleration and torque (the "test drive experience").

34.     At the conclusion of the sales meetings, Plaintiff purchased from Dealer one of

the affected vehicles, specifically, a 2014 Volkswagen Jetta TDI, vin 3VWPL7AJ7EM608864.

35.     Plaintiff's decision to purchase his vehicle was based in substantial part on

Defendant's aforementioned representations and warranties.  Absent the foregoing

representations and warranties, Plaintiff would not have purchased the vehicle.

36.     Plaintiff's decision to purchase their vehicle was further based in substantial part

on the aforementioned test drive experience.  Absent the test drive experience, Plaintiff would

not have purchased the vehicle.

37.     Because Volkswagen's deception with respect to its Clean Diesel engines, engine

control systems, and defeat devices was painstakingly concealed from consumers and regulators

alike, as described above, Plaintiff could not reasonably discover, and did not know of facts that

would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report

information within its knowledge to federal and state authorities, its dealerships, or consumers.

38.     Likewise, a reasonable and diligent investigation could not have disclosed that

Volkswagen had information in its sole possession about the existence of its sophisticated

emissions deception and that it concealed that information, which was discovered by Plaintiff

immediately before this action was filed. Plaintiff could not have previously learned that

Volkswagen valued profits over compliance with applicable federal and state emissions and

consumer law.

39.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

40.     Instead of disclosing its emissions deception, or that the emissions from the affected vehicles were far worse than represented, Defendants falsely represented that its vehicles complied with federal and state emissions standards, and that Volkswagen was a reputable manufacturer whose representations could be trusted.

41.     Volkswagen was under a continuous duty to disclose to Plaintiff the facts that it knew about the emissions from the affected vehicles and of those vehicles' failure to comply with federal and state laws.

42.     Although it had the duty throughout the relevant period to disclose to Plaintiff that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the affected vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

43.     The harm to Plaintiff is significant and real.

44.     First, should Defendants remove the defeat device from the affected vehicles so that they comply with emissions requirements during normal operation, the performance characteristics of the affected vehicles, including their horsepower and their efficiency, will be significantly degraded. As a result, Plaintiff will suffer actual harm and damages because the vehicle will no longer perform as it did when test driven and purchased, will no longer perform

as Defendants advertised and represented it to perform, and will no longer perform in compliance with the contract of sale between Defendants and Plaintiff.

45.     Second, Defendants' actions, with or without removal of the defeat device, has necessarily resulted in a diminution in value of Plaintiff's vehicle.  This diminution of value results (i) from the fact that Plaintiff originally paid too much for the vehicle, which is now worth substantially less than prior to the disclosure of Defendants' actions, and (ii) from the resulting increase in fuel costs for the life of the vehicle over those which would have been experienced had the defeat device not been removed (i.e., had the vehicle performed as represented by Defendants at the time of purchase).

## First Count
## False Advertising Under Section 43(a)
## Of The Lanham Act, 15 U.S.C. § 1125(a)

46.     Plaintiff realleges the allegations contained in the above paragraphs as if stated fully herein.

47.     The statements, advertisements and promotional activities of Defendants described herein were false and misleading in material respects, including, *inter alia*, the with respect to the suitability of operation of the affected vehicle in the ordinary course in compliance with applicable state and/or federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner, and further with respect to the level of performance of the affected vehicle when operated  in the ordinary course in compliance with applicable state and/or federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner.

48.     Plaintiff was injured and continue to be injured as a result of the false and misleading advertisement.

9

**Second Count**
**False Advertising Under**
**New York General Business Law § 350**

49.     Plaintiff realleges the allegations contained in the above paragraphs as if stated

fully herein.

50.     The acts, practices and advertisements described herein were consumer-oriented

and were false and misleading to consumers-at-large in material respects, including, *inter alia*,

the with respect to the suitability of operation of the affected vehicle in the ordinary course in

compliance with applicable state and/or federal requirements, in an environmentally "friendly"

manner and in a fuel-efficient manner, and further with respect to the level of performance of the

affected vehicle when operated  in the ordinary course in compliance with applicable state and/or

federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner.

51.     Plaintiff was injured and continue to be injured as a result of the false and

misleading advertisement.

**Third Count**
**Deceptive Business Practices Under**
**New York General Business Law § 349**

52.     Plaintiff realleges the allegations contained in the above paragraphs as if stated

fully herein.

53.     In engaging in the acts described herein, Defendants were engaged in consumer-

oriented business practices and acts which were misleading in material respects, including, *inter*

*alia*, the with respect to the suitability of operation of the affected vehicle in the ordinary course

in compliance with applicable state and/or federal requirements, in an environmentally "friendly"

manner and in a fuel-efficient manner, and further with respect to the level of performance of the

affected vehicle when operated  in the ordinary course in compliance with applicable state and/or

federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner.

54.     Plaintiff was injured and continue to be injured as a result of the aforementioned

deceptive practices.

**Fourth Count**
**Fraud And Fraudulent Inducement**

55.      Plaintiff realleges the allegations contained in the above paragraphs as if stated

fully herein.

56.     In engaging in the acts described herein, Defendants intentionally and knowingly

misrepresented and/or concealed materials facts concerning the affected vehicles, including,

*inter alia*, the with respect to the suitability of operation of the affected vehicle in the ordinary

course in compliance with applicable state and/or federal requirements, in an environmentally

"friendly" manner and in a fuel-efficient manner, and further with respect to the level of

performance of the affected vehicle when operated  in the ordinary course in compliance with

applicable state and/or federal requirements, in an environmentally "friendly" manner and in a

fuel-efficient manner.

57.     The aforementioned misrepresentations and/or concealments were intended to and

did in fact induce Plaintiff to enter into the contract for sale of the affected vehicle and to

purchase the affected vehicle, into which Plaintiff would not have entered but for the material

misrepresentations and/or concealments.

58.     Plaintiff was justified in relying on the aforementioned misrepresentations and/or

concealments.

59.     Plaintiff was injured and continue to be injured as a result of the aforementioned misrepresentations and/or concealments and their reliance on such misrepresentations and/or concealments.

**Fifth Count**
**Breach Of Contract**

60.      Plaintiff realleges the allegations contained in the above paragraphs as if stated fully herein.

61.      In engaging in the acts described herein, Defendants breached their contract of sale with Plaintiff by failing to deliver to Plaintiff the vehicle for which the parties contracted and instead delivering a vehicle which was defective, *inter alia*, the with respect to the suitability of operation of the affected vehicle in the ordinary course in compliance with applicable state and/or federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner, and further with respect to the level of performance of the affected vehicle when operated  in the ordinary course in compliance with applicable state and/or federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner.

62.      Plaintiff was injured and continue to be injured as a result of the aforementioned breach of contract.

**Sixth Count**
**Breach Of The Implied Warranties Of Merchantability**
**And Fitness For An Intended Purpose**

63.      Plaintiff realleges the allegations contained in the above paragraphs as if stated fully herein.

64.      Plaintiff's affected vehicle was defective such that it is not merchantable under New York law and is not fit for the warranted intended purposes, including, *inter alia*, the

purpose of operation in the ordinary course in compliance with applicable state and/or federal requirements, in an environmentally "friendly" manner and in a fuel-efficient manner.

65.    The defects detailed herein existed both at the time the product left the control of Volkswagen and Dealer or entity in the line of distribution.

66.    Plaintiff was injured and continue to be injured as a result of the affected vehicles failure to satisfy the implied representations and warranties of Volkswagen and Dealer, as detailed herein.

67.    The defects detailed herein were a substantial factor in causing the injury complained of herein.

### Prayer For Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff:

a.    awarding actual damages to Plaintiff for each Defendants' actions complained of herein, in an amount to be determined;

b.    awarding exemplary damages to Plaintiff in an amount equal to three times the actual damages;

c.    awarding Plaintiff its costs and attorneys' fees; and

d.    providing all other equitable relief that the Court deems just and proper.

Dated: October 2, 2015

Plaintiff Benjamin Austin, by his attorney,

Jeffrey Sonnabend (JS1243)
SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215-6012
718-832-8810
JSonnabend@SonnabendLaw.com

14